IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

REGINALD L. SHUMPERT,                 )
                                      )
                  Movant,             )
                                      )
       vs.                            )     No. 1:19 CV 116 SNLJ
                                      )
UNITED STATES OF AMERICA,             )
                                      )
                  Respondent.         )

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set

aside or correct sentence by Reginald L. Shumpert, a person in federal custody. On October

20, 2016, a bench trial was held and Shumpert was found guilty to the offense of Bank

Robbery. On January 17, 2017, this Court sentenced Shumpert to the Bureau of Prisons for

a term of 240 months. Shumpert's § 2255 motion, which is based on multiple claims

including allegations of ineffective assistance of counsel, is fully briefed and ripe for

disposition.

## FACTS

On May 19, 2016, a Grand Jury in the Eastern District of Missouri, Southeastern

Division, returned a one-count Indictment against Reginald L. Shumpert charging him with Bank

Robbery in violation of Title 18, United States Code, Section 2113(a) in Case Number 1:16 CR

00057 SNLJ. (Case Number 1:16 CR 00057 SNLJ; DCD 1) On October 17, 2016, the District

Court granted Shumpert's request to waive his right to a jury trial and proceed to a bench trial.

(Case Number 1:16 CR 00057 SNLJ; DCD 41, 42) On October 20, 2016, Shumpert appeared

1

with his attorneys for the trial. The evidence was presented as follows.

On May 9, 2014, at around 9:30 a.m., a man wearing bib overalls, a long sleeved shirt and dreadlocks entered the Bank of Missouri branch bank in Cape Girardeau, Missouri. The man walked up to the teller station of Tasha Schusler, the head teller for the bank, and placed a note on the counter. Schusler picked up the note and read its contents, which informed her that she had five minutes to produce all the money from her drawer. The note further stated that the man had a bomb strapped to his chest and a bomb at a school. The note stated that if Schusler did not comply with the instructions, the man would detonate the bombs in five minutes. The note was on a typewritten form, with certain areas covered over with whiteout and handwritten words inserted in those portions. (TR., pp. 22-33, 49)

Schusler re-read the note and looked at the man, who was standing two feet from her. The man stated, "Think about the kids." (TR., pp. 33-35) Schusler looked at the man and noticed that he was wearing a wig, was tall (about six feet, four inches) and weighed 190 to 200 pounds. Schusler noticed that the man was black and his skin tone was "light." The man had a broad nose and several gold teeth. The man was not wearing gloves or any covering over his hands. Schusler noticed that the man was holding a key fob in his left hand. The back of the man's left hand displayed a very large black ink tattoo of a triangle with "something in it" and writing underneath it. The back of the man's right hand displayed a large tattoo. Both tattoos were of poor quality. (TR., pp. 30-31, 56-58, 60-61)

Schusler emptied her cash drawer, placing around $7,925 in cash that had been in the care, custody and control of the Bank of Missouri on her counter. The man asked for a bag. Schusler replied that she did not have one.  The man then stated, more than once, "You know you fucked up." The man retrieved a device from the chest area of his overalls and placed it on

the counter.  The device appeared to be silver pipes wrapped with electrical tape, a blinking

light, a switch and wiring. Schusler thought it was a real bomb. The man picked up the cash

from the counter and the note and placed them in the chest area of his overalls where the device

had been. He turned around and walked out of the bank through the door he had entered. (TR.,

pp. 35-40, 43)

Schusler was having a hard time breathing at this point. Other employees came over to

see if she needed assistance. Schusler told the employees that she had been robbed.  She

reported the robbery to the 911 operator, who advised the bank employees to leave the building.

Officers arrived within minutes to begin their investigation. The bank surveillance system

preserved a video of the robbery. As the employees walked out, they found several $20 bills on

the ground in the area where the robber left the bank.    (TR., pp. 41-45)

At trial, Schusler identified Shumpert as the person who robbed the bank on May 9, 2014.

(TR., pp. 64, 65)  That was the first occasion that Schusler identified the bank robber as

Shumpert by any method.  She identified the photos of Shumpert's hand tattoos as consistent

with the tattoos on the robber's left and right hands on May 9, 2014. (TR., pp. 56-61; Trial

Exhibits 13, 14)

The SEMO Bomb Squad removed the device from the bank using a robot.     Another

officer investigated a nearby alley and collected $500 in cash that was lying on the ground.  The

money was wrapped in a bundle, secured with a rubber band.  (TR., pp. 90, 100, 101)  A total

of $2,000 in cash was found outside the bank that was returned to the bank.  (PSR, ¶ 12)

Officers spoke to two employees of a business near the bank, a rural health clinic known as River

City Health Clinic. One of the employees, Loine Penny, was familiar with the other employees

of the clinic and knew the cars that they usually drove and parked on a nearby parking lot.  On

3

the morning of the bank robbery, Penny got in her car to make a delivery for the clinic. She

backed out of her parking space and started to drive away. As she did so, Penny noticed a

"goldish brown" car in her rear view mirror that was driving onto the parking lot. After Penny

returned from her delivery, she noticed that the car was still on the lot and that it had Texas

license plates. Penny knew that the car did not belong to one of the clinic's employees. She

spoke to another employee, Ashley Howard, about going outside to look more closely at the car.

(TR., pp. 135-140)

After she spoke to Penny, Howard went outside to look at the car and smoke. Howard

walked to her car on the parking lot, which was parked beside the "goldish brown" car. Howard

saw that the car was a Ford Crown Victoria and that its non-factory paint job was rough.

Howard saw the driver's arm, describing the race of the driver as black and his sex as male. The

Crown Victoria quickly exited the parking lot, driving toward another city street. (TR., pp. 146-

149)

Kristie Hamilton, a resident of Rockwall, Texas, had purchased a gold Ford Crown

Victoria in either 2008 or 2009. Around 2013, the car was stolen while Hamilton owned it and

was subsequently recovered by police officers in Texas. The officers took photos of Hamilton's

car after it was found. The photos displayed a Texas license plate number of GSF 042 on the

car and showed that the car was damaged. The car was repainted a brown or gold color after the

theft.  The paint job was clearly not a factory paint job.    (TR., pp. 159-163)

Hamilton had borrowed money from National Pawn, using the Crown Victoria as

collateral.   She defaulted on that loan and the company demanded the surrender of the car for

the nonpayment. Hamilton left the car at her father's house so that the loan company could pick

it up. She never saw the car again after that. The car was able to be started without the keys

4

because the ignition was damaged when it was stolen. (TR., pp. 163-164)

Hamilton knew Reginald Shumpert for 13 to 14 years and was involved in a relationship with him. She had spoken with Shumpert about her returning the car to the loan company for her nonpayment of the debt secured by the car. (TR., pp. 159, 164) After the car disappeared from her father's house, Hamilton began receiving traffic violation notices referencing the Crown Victoria from Missouri. Hamilton was aware that Shumpert had relatives in the St. Louis area. (TR., p. 165)

Hamilton was familiar with tattoos on the backs of Shumpert's hands. She identified Trial Exhibit 13 as a photo of the back of one of Shumpert's hands, and also identified Trial Exhibit 14, a photo of the other hand. Shumpert had those tattoos in 2014. The left hand tattoo depicts a triangle with an eye. The words "No Play" appear below the triangle. The right hand tattoo is a rectangular stack of cash wrapped with a band.  The words "All Work" appear beneath the stack of cash. (TR., pp. 167-168) A photo of Shumpert was admitted at his trial (Trial Exhibit 16) in which Shumpert displays his gold teeth.

Around 11:30 p.m. on the night of May 9, 2014, the same date as the bank robbery, Travis Loughary had just dropped off a fellow employee near the intersection of Interstate 270 and Dunn Road in Florissant, Missouri. He was stopped at a stop light, but observed a man and woman in a parking lot of a nearby La Quinta hotel. The man was assaulting the woman. Loughary called 911 and spoke to a police dispatcher to report the assault. Loughary drove to the parking lot, arriving at a position five feet from the man and woman. He continued to report the assault to the dispatcher while he drove to that location. Loughary saw the man slam the woman to the ground three or four times and throw her against a car. The man moved the woman out of the way and then drove his Crown Victoria away. Loughary reported the license

5

plate of the car as GSF 042, which was the license plate number on Hamilton's Crown Victoria. Police officers responded and discovered that Jada Pierce was the woman who was assaulted. She reported that her assailant was Reginald Shumpert, a person with whom she had a relationship. Pierce knew that Shumpert usually drove a gold Crown Victoria automobile with Texas license plates on it. (TR., pp. 173-185)

Pierce recognized a photo from the Bank of Missouri bank robbery as depicting Reginald Shumpert.   Pierce had watched Shumpert make the wig depicted in that photo and described it as a "dreadlock" wig that was sewn onto a stocking cap. She described the wig as made with synthetic hair and that she assisted Shumpert in the making of that wig. Pierce recognized the shoes worn by Shumpert during the bank robbery as being one of two pair that Shumpert bought at a Shoe Carnival store. Pierce recognized the overalls that Shumpert was wearing during the robbery as a pair of Dickey's brand overalls that he wore "all the time." (TR., pp. 185, 189-190) Pierce knew about Shumpert's hand tattoos, identifying the backs of Shumpert's hands. One tattoo depicted a triangle with an eye in the middle of it and the other one was a stack of cash money. (TR., p. 190)

Pierce's mother works in another bank and had seen photos of the Bank of Missouri robbery and showed copies of those photos to Pierce. When Pierce recognized Shumpert from those photos, she called the Crimestoppers tip line to report that Shumpert was the person in the bank robbery photo. The investigation centered on Shumpert after that call. (TR., pp. 200-208)

After that evidence was presented, the Government rested. The defendant called FBI agent Brian Ritter and then rested. This Court then found Shumpert guilty of the charge of Bank Robbery. At a later date, Shumpert was sentenced to a term of imprisonment of 240 months. Shumpert appealed his conviction. Shumpert's conviction was affirmed in *United*

6

*States v. Shumpert*, 889 F.3d 488 (8th Cir. 2018).  Shumpert's sole issue on appeal was his claim that the Government's in-court identification of him was overly suggestive and should have been suppressed by the District Court. Shumpert argued that his due process rights were violated by the in-court identification. That argument failed under plain error review.

**Petition for Post-Conviction Relief Pursuant to §2255.**

On July 22, 2019, Shumpert filed his Petition under 28 U.S.C. §2255, asking that this Court set aside Shumpert's conviction and sentence. Shumpert alleges several errors related to his conviction, which are set out below.

1.    Improper police conduct involving some unknown case filing by Shumpert.

2.    Improper in-court identification during trial.

3.    Ineffective assistance of defense counsel alleging some type of fraud and concealment by his attorney.

4.    Violation of Missouri statute regarding an NCIC criminal records search.

5.    Improper acquisition and use by the Government of photos of Reginald Shumpert taken while he was in a Texas jail.

## APPLICABLE LAW

### A.    NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF

28 U.S.C. §2255 provides, in pertinent part:

Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

The motion, together with all the files, records, transcripts, and correspondence

7

relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. *Id.*, at 225-6. See also *United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995) *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

## B.     INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. 466 U.S. at 687. This requires the movant to show "that counsel made errors so serious that counsel was

8

not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable."   *Id*.  The movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

   The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different.  *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More recently the Eighth Circuit has described the *Strickland* test as follows: "Whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

   When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064-65. Counsel's challenged conduct is viewed as of the time of his representation. "And we avoid making judgments based on hindsight."  *Fields*, 201 F.3d at 1027. A reviewing court's "scrutiny of counsel's performance must be highly deferential."

*Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

The standard to be used in a collateral charge of ineffective assistance of counsel following a guilty plea is governed by *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366 (1985), which applies the holding of *Strickland* to instances involving guilty pleas.  A movant who pleads guilty upon advice from counsel may only contest the voluntary and intelligent character of the plea by establishing that the advice given was not within the range of professional competence required of the attorney in a criminal case. *Lockhart*, 474 U.S. at 56, citing *Tollett v. Henderson*, 411 U. S. at 267.

## DISCUSSION

### Issue # 1.        Improper police conduct involving some unknown case filing by Shumpert.

In this point, Shumpert attempts to make an argument regarding a complaint that someone allegedly filed that "showed improper police conduct."  This Court is not aware of what filing, complaint, brief, or any other document that Shumpert is referring to or how it affected Shumpert's conviction or sentence. The claim does not set out what case his "complaint" was filed in or how those allegations affected his prosecution.  Shumpert's very brief supporting facts for this issue do not state the court where the document was filed or how that court had jurisdiction over the matter. His first claim does not set out any facts showing that his Bank Robbery conviction was obtained unlawfully, or unconstitutionally or in violation of any statute or rule. The Government represents that it has attempted to locate the filing by the date of filing asserted by Shumpert but has been unable to do so. Furthermore, Shumpert did not include a copy of the filing, or the case number or any other information that would enable this Court to address this claim.

A Section 2255 movant's petition may be dismissed without a hearing if it is a mere

statement of unsupported accusations or is comprised of conclusions rather than statements of fact. *See United States v. Rodriguez-Rodriguez*, 929 F.2d 747, 749-50 (1st Cir. 1991) and *Smith v. United States*, 618 F.2d 507, 510 (8th Cir. 1980); *Woods v. United States*, 567 F.2d 861, 863 (8th Cir. 1978).  Shumpert's allegations for his first issue simply do not state any facts which would allow his conviction or sentence to be challenged under the limitations of Section 2255. Title 28, United States Code, Section 2255(a) permits a convicted federal defendant to challenge his conviction if he can show certain grounds:

1.    that the sentence was imposed in violation of the Constitution or the laws of the United States;

2.    that the Court was without jurisdiction to impose such sentence;

3.    that the sentence was in excess of the maximum authorized by law; or

4.    is otherwise subject to collateral attack.

Shumpert has not alleged any of the four grounds for Section 2255 relief in this issue. Rather, Shumpert seems to be contending that one of his filings in a different court or different case was improperly classified as a brief rather than as a complaint. As such, this issue is not cognizable in a Section 2255 motion and will be dismissed without an evidentiary hearing.

**Issue # 2.    Improper in-court identification during trial.**

In this issue, Shumpert contends that the three photos taken of his face and the backs of his hands were taken while he was in the Bell County, Texas, jail without a warrant or consent. Shumpert also contends that he was improperly placed in the courtroom for identification without a photo array being used for that purpose.

Once again, Shumpert has failed to raise a ground for relief permitted by Title 28, United States Code, Section 2255(a). Shumpert fails to identify how those photos affected his trial or

why their use was improper. He fails to set out what Constitutional provision was violated or any statute that was not complied with.  Shumpert alleges that the Government could not acquire those photos without a warrant, but provides no factual or legal support for that argument, nor sets out exactly why a "warrant" was required.

This Court notes that Shumpert has procedurally defaulted any claim that the photos were improperly taken or used. If he had a valid complaint as to that issue, he was required to make it in his direct appeal.   A Section 2255 motion is not the proper vehicle to claim evidentiary error. Shumpert was surely aware that any in-court identification issue was required to be brought in a direct appeal; after all, his entire direct appeal involved whether his in court identification was improperly suggestive. Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent'. *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604 (1998). Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal. *Id. See also Roundtree v. United States*, 885 F.3d 1095, 1098 (8th Cir. 2018). Shumpert has not attempted to raise either cause, actual prejudice or actual innocence. Having failed to raise this issue on direct appeal, Shumpert may not have it considered in a Section 2255 motion, and the claim will be dismissed.

Even if this claim was not procedurally barred, the Fourth Amendment provides no protection for what a person knowingly exposes to the public, even in his own home or office. *United States v. Dionisio*, 410 U.S. 1, 12, 93 S.Ct. 764 (1973), *citing Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507 (1967) (Approving a grand jury subpoena to obtain a suspect's voice recording). As the *Dionisio* Court stated, "Like a man's facial characteristics, or

handwriting, his voice is repeatedly produced for others to hear. No person can have a reasonable expectation that others will not know the sound of his voice, any more than he can reasonably expect that his face will be a mystery to the world." *Dionisio*, <u>410 U.S. at 14</u>.  See also *United States  v. Emmett*, 321 F. 3d 669, 672 (7th Cir. 2003) ("a person has no expectation of privacy in a photograph of his face.")

This Court is aware of the holding of *Pace v. City of Des Moines*, <u>201 F.3d 1050</u> (8th Cir. 2000), in which the Eighth Circuit held that a police officer violated a suspect's Fourth Amendment rights by ordering the plaintiff to take his shirt off and to photograph the suspect's chest. There was a tattoo on the suspect's chest that the officer wanted to photograph. The *Pace* Court noted that the suspect's rights were violated because he was improperly detained and improperly searched (examining the skin below the shirt) for the photograph. The Court found that requiring a person to remove their shirt was an improper search.

Such is certainly not the case with the photographs of Shumpert's face and hands. Shumpert was already in jail in Texas, so his continued seizure was not occasioned by the need to take the photographs. Furthermore, the photographs taken of Shumpert's face and the backs of his hands were of locations that were always publicly visible. There was no "search" of a portion of Shumpert's body that was normally concealed as was the case in *Pace*. This claim will be dismissed as well.

**Issue # 3.**      **Ineffective assistance of defense counsel alleging some type of fraud and concealment by his attorney.**

In this claim, Shumpert claims that his attorney and the Government's attorney engaged in "fraudulent and passive concealment" of a recording that his attorney made from a witness named Johnson who lived in Texas. Shumpert then goes on to claim that this "Johnson" was the

actual person who called in the Crimestoppers tip about the bank robbery rather than Government witness Jada Pierce. Pierce testified at the trial that she had turned in a Crimestopper's tip that Shumpert was the person who robbed the Cape Girardeau bank.

First, the Government represents that it has absolutely no idea what recording that Shumpert's attorney might have made from some unknown person in Texas. Moreover, Shumpert does not set out any Constitutional infirmity related to that information or how it might have affected his guilt or innocence. This Court assumes that Shumpert is claiming that Jada Pierce was untruthful when she testified that she was a person who called in a Crimestoppers tip about the robbery. But the testimony of Jada Pierce was properly before the Court during the trial, and the Court was required to determine whether she was credible. In finding Shumpert guilty, this Court found that Pierce was "exceedingly credible" along with the bank teller witness. (Trial Tr. p. 224) Shumpert has not provided any reason to doubt Pierce's credibility. The alleged recording has never been produced for the Government and Shumpert has neglected to provide it with his motion. Shumpert has not claimed any error that is cognizable in a Section 2255 motion in this claim of error. This issue will be dismissed without an evidentiary hearing.

**Issue # 4.          Violation of Missouri statute regarding an NCIC criminal records search.**

Again, Shumpert has not set out any Constitutional violation related to his conviction. He simply makes some vague complaint that some Missouri statute was not complied with in regards to his criminal records contained in some report. That NCIC report that Shumpert is complaining about was never introduced into evidence at his trial and cannot be a basis for a Section 2255 complaint. Shumpert styles this issue as "Ineffective Assistance of Counsel" but provides no information as to how his attorney was ineffective in a way that affected his conviction. This vague complaint cannot support Section 2255 relief.

14

**Issue # 5.**      **Improper acquisition and use by the Government of photos of Reginald**

**Shumpert taken while he was in a Texas jail and fraud upon the Court.**

In this claim, Shumpert makes two separate accusations; first, that photos taken of him in a Texas jail were somehow improperly taken or used, and second, that the Government fraudulently used Jada Pierce as a witness in spite of the fact that Shumpert believes she was untruthful. Shumpert does not set out any basis that his photos were improperly taken. This Court has already determined that Shumpert either procedurally waived his right to complain about the photographs or that there was no constitutional violation in photographing areas of his body that are exposed to public view. Shumpert provides no facts, no law, and no authority for any argument that his photos were improperly taken or used.

As to his claim that the Government was aware that Jada Pierce's testimony was false, Shumpert provides absolutely no support for that claim. He makes a vague statement that, if he were permitted to discover certain reports from Texas, he could establish a basis for his claim. Again, the Government represents it is without any knowledge or belief that there are any reports in Texas related to Jada Pierce or her testimony about the bank robbery in Cape Girardeau.

Shumpert also makes references to lawsuits he filed against a John Gaunt in Texas. He asserts that this lawsuit will prove that Jada Pierce lied at his trial. Shumpert provides no detail, no evidence of a false statement by Pierce and no connection to a Constitutional violation that would impact his conviction. This issue will be dismissed.

### SHUMPERT'S SUPPLEMENTAL PLEADINGS

Shumpert has filed a Motion to supplement his Section 2255 petition in Documents 11

and 12. Those two documents add several matters to the issues already under consideration in his original Section 2255 petition.  As an initial matter, nearly all of Shumpert's supplemental claims are outside the purview of a valid Section 2255 claim. Again, the proper grounds for a Section 2255 claim are as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground
>
> (1)      that the sentence was imposed in violation of the Constitution or laws of the United States, or
>
> (2)      that the court was without jurisdiction to impose such sentence, or
>
> (3)      that the sentence was in excess of the maximum authorized by law, or
>
> (4)      [or the sentence] is otherwise subject to collateral attack
>
> may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Title 28, United States Code, Section 2255(a).

This Court agrees that claims made by Shumpert that his attorney was ineffective may give rise to a valid Section 2255 issue as a collateral attack under the fourth ground for a Section 2255 claim. A substantial portion of Shumpert's claims in his Supplemental Motions do not aver that his attorney was ineffective. Instead, he focuses on his claims of perceived errors by this Court, trial errors or other claims. Nearly all of those types of claims were required to be

16

raised in his direct appeal. A Section 2255 petition is not a substitute for an appeal. The correct grounds for a Section 2255 petition are narrow and are set forth above. Even where Shumpert claims his attorney was ineffective, he fails to set forth any facts that demonstrate ineffective assistance of counsel.

**Supplemental Issue 1 – Document 11 – page 3:**

In this claim, Shumpert claims that he "is being denied [access to] (1) the complaint that was lodged against him." Shumpert explains the meaning of that issue later in on the same page when he states:

> The statement of the fact is, there was a complaint that was made by officer Brian W. Ritter on 04-25-2016. I have not seen or read Special Agent Brian W. Ritter's complaint affidavit filed against Movant Reginald L. Shumpert, being charged for a bank robbery when Movant never read any complaint to place Movant at a crime scene. Page 214 of Trial Transcript Line 4 to 21. Stated by Officer Ritter to the Trial Judge "That he wrote the Report."

Shumpert asserts that there was a "complaint" actually filed by FBI SA Brian Ritter. A brief review of the casefile demonstrates that Shumpert is simply mistaken. There was never any "complaint" filed against him in this case.

It appears that Shumpert is confusing two different things in this statement. He is confusing a criminal "Complaint" with a report written by an agent. Shumpert seems to suggest that he was originally charged by a "Complaint" such as is authorized by <u>Federal Rules of Criminal Procedure 3</u> and 4. That form of prosecution requires the Complaint to be in written form and made under oath, such as by an affidavit. However, Shumpert was not charged by Complaint. Instead, he was charged by indictment as permitted by <u>Federal Rule of Criminal Procedure 7</u>. All felonies must be charged in federal court by grand jury indictment, unless the

17

defendant waives that right. So there is a very good reason why Shumpert has never seen a copy of a Complaint, or the accompanying Affidavit. There is not a Complaint or Affidavit associated with his case. No Complaint or Affidavit was required, since his case was initiated by Indictment.

Shumpert's other statement related to this claim is that FBI Special Agent Brian Ritter "wrote the report", citing the trial transcript at page 214, Line 4 to 21. Shumpert seems to believe that this "report" has something to do with a "complaint." It does not. Rittter's report was simply his written memorialization of Ritter receiving information concerning a Crimestopper's tip. Shumpert makes reference to the trial transcript to assert that there was a complaint. That trial transcript shows that SA Ritter only set out in his report the information he received from another FBI agent. That testimony is set out below:

Altman:      And on April 19th of 2016 did you receive some kind of information from an anonymous Crime Stopper?

Ritter:      Yes. I received information from Special Agent David Herr of our office up in St. Louis that Crime Stoppers information had been received.

Altman:      And in that anonymous tip that you received did the caller report that Shumpert was currently incarcerated in Bell County?

Ritter:      That was the information that was passed on to me. I don't know if

18

that came from the caller, or if that was the information that was
reported to me from the Crime Stoppers tip.

Altman:     And so you wrote a report on this?

Ritter:     Yes.

Altman:     Is that correct?

Ritter:     That's correct.

Altman:     And, obviously, you have training in writing reports?

Ritter:     I do.

Altman:     And you would write down all the important facts; is that right?

Ritter:     Yes. I received an e-mail from Special Agent Herr which had the
information that he was reporting that was received from the Crime
Stoppers tip, and I document in this 302 - -

Altman:     And so if you wrote in your report the caller reported that Shumpert
is currently incarcerated in Bell County, Texas on other charges and
that, the St. Louis Police Department has warrants for Shumpert, you
would believe that would be an accurate statement?

Ritter:     It's accurate is what was reported to me from Special Agent Herr that

he received.

Altman:        So the information that you received is accurate - - accurately

               depicted here?

Ritter:        That is what was reported to me, and that's what I documented, yes.

Trial Tr., pp. 214-15.

The "report" that Ritter testified about is attached to this Response as <u>Exhibit 1</u>. It was turned over to Shumpert's attorney with all of the other reports in this case at the beginning of the case. The report details the call made by FBI Special Agent Herr to Ritter, notifying Ritter that an anonymous tipster had provided information that Reginald Shumpert was the person who robbed the bank in this case. The caller had looked up the bank robbery photos on the Bandit Tracker website and saw that the robbery suspect was Shumpert.

The only significance of this report is that it is the first information received by the FBI that Reginald Shumpert might be the bank robber in this case. The investigation focused on Shumpert from that moment on. The report was not part of any "Complaint" or affidavit and was not part of any document charging Shumpert with any crime.

As to Shumpert's issue here, it is clear that this report has nothing to do with any "Complaint" charging Shumpert with any crime. It was provided to Shumpert's attorney early in this case, which is how his attorney knew to ask any questions about it. Shumpert had access to Ritter's report as part of the discovery, as shown by its inclusion in this pleading.

In this same claim, at page 3 of Document 11, Shumpert also asserts some issues that are

just nonsensical, as follows: "(2) Discovery under Rule 26 (3500 Jencx material) (3) Material witnesses (4) How the pictures were obtained, <u>Exhibit</u> H 21/71 – 22/71 (5) The officers who are a part of this case." This Court has absolutely no idea what Shumpert is talking about for these points. Shumpert does not set out any facts to support any of those claims. He sets out no law supporting why any of these claims should result in relief to him. A Section 2255 movant may not rely on conclusory or non-specific factual allegations to support his Section 2255 motion. *French v. United States*, <u>2014 WL 12603508</u>, \*3 (W.D.Missouri, October 20, 2014), *citing Voytik v. United States*, <u>778 F.2d 1306, 1308</u> (8th Cir. 1985). These allegations fail completely to state a factual ground for relief.

Shumpert's claim in this matter fails on its merits, in that he was not charged by Complaint or Affidavit and because Ritter's report as to the event was provided to his attorney.

Finally, Shumpert's issue here is not cognizable in a Section 2255 petition, in that Shumpert does not claim that his sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose his sentence, or that the sentence was in excess of the maximum authorized by law, or that his attorney was somehow ineffective for this claim. Because Shumpert has failed to raise a proper Section 2255 issue here, this claim will be dismissed for this reason also.

**Supplemental Issue 2 – Document 11 – page 3:**

On pages 3 and 4 of his Supplemental Motion, Shumpert makes a vague claim that he was entitled to know the identity of the witness who filed the Crimestopper's Report. The Government represents it does not know exactly who that person is, because the Crimestopper's

information was anonymous. That information is contained in Ritter's Form 302 (Exh. 1) and in Ritter's testimony as related above.  Ritter had no information as to who the actual person was who called in that report.  Ritter eventually found out that Government witness Pierce made a report to the Crimestopper's tipline, but Ritter did not know if FBI Agent Herr's information came from Pierce's report or from some other person. Shumpert does not disclose how he would use that information to show that he should be entitled to vacate his sentence under Section 2255; he merely assumes that he is entitled to such information. Fatal to this claim, Shumpert does not disclose how the identity of the actual person who made a particular Crimestopper's report would change the result of his trial.

Jada Pierce testified that she did not know several pieces of information that were contained in Ritter's report, lending credence to the theory that some other person actually made that particular Crimestopper's report. (Trial Tr. p. 201) She testified that she did not know that Shumpert was in a Texas jail at the time of her Crimestopper's report, for example. But whether there were two people making Crimestopper's reports or ten, it makes no difference. The only fact that is relevant is Jada Pierce's trial testimony, not any Crimestopper's report.

Shumpert's issue here is not cognizable in a Section 2255 petition, in that Shumpert does not claim that his sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose his sentence, or that the sentence was in excess of the maximum authorized by law, or that his attorney was somehow ineffective for this claim. Because Shumpert has failed to raise a proper Section 2255 issue here, this claim will be dismissed on its merits and because it fails to state a proper ground for relief under Section 2255.

**Supplemental Issue 3 – Document 11 – pages 4 – 7:**

In pages 4 – 7, Shumpert makes a claim that his trial attorney was ineffective, a ground that is cognizable as grounds for Section 2255 relief. However, Shumpert completely fails to demonstrate any basis for his claim. This Court will set out Shumpert's factual claims as best that it can from his pleading.

Page 4:     Here, in Amanda Lee Altman "Log-on Sheet" and "Notes" taken in Exhibit A, B, & C Attorney Amanda Lee Altman did not show the Court her investigated facts to prove Movant actual innocence.

This Court assumes that Shumpert is claiming that Altman did not properly investigate the facts of his case. Again, Shumpert completely fails to demonstrate what additional facts could have been discovered or how those facts would affect the outcome of his trial. This Court will examine each of Shumpert's Exhibits to demonstrate that each has no bearing on proving Shumpert's innocence.

Exhibit A, is a CaseNet printout of Reginald Shumpert's criminal cases and Adult Abuse Order cases. This Court has no idea why this exhibit would show either Shumpert's innocence or Altman's ineffectiveness. Shumpert does not explain why the exhibit helps his position.

Exhibit B, is a printout of the Bandit Tracker information showing still photos of the robbery in progress. Shumpert has written on the form, "Let the record reflect on the act of the conspiracy, 'No where in the video, does tattoos appear on the subject.'" However, the description of the bank robber immediately below the photos states: "He has tattoos on the back of both hands." This Court assumes that Shumpert believes that, since the photos of the robber do not

23

depict tattoos, that he must be innocent.

The primary problem with this claim is that the Government never used this "Bandit Tracker" information in Shumpert's trial. He cannot somehow claim that he was prejudiced by this form, since it was never introduced as an exhibit.

And as to the tattoos, Bank Teller Tasha Schusler testified at length as to her recollection of the bank robber's hand tattoos. She recalled the following about the robber's hands:

> That the man was not wearing gloves.
>
> That she saw both hands.
>
> That the backs of both hands had tattoos.
>
> That the back of the man's left hand had a black ink tattoo.
>
> That the tattoo took up most of the back of his hand.
>
> That the tattoo was of poor quality.
>
> That one of the tattoos was of a "triangle."

(Trial Tr. pp. 57-59, 60)

Schusler was shown photos of the backs of Shumpert's hands, which were marked with large tattoos. She was unable to testify that the photos were what she saw on the backs of the hands of the bank robber, except that the triangle tattoo photo was similar to what she had seen. (Trial Tr. pp. 58-59, 60-61)

Shumpert's attorney questioned Schusler over the tattoos. (Trial Tr. pp. 74-75) But not

24

once did a bank employee make a positive comparison of Shumpert's actual hand tattoos to the tattoos displayed by the robber. So, any complaint of Shumpert that his hand tattoos somehow were used to convict him is a false assertion. The only connecting point between Shumpert's actual hand tattoos and what Schulser saw was the fact that each man had hand tattoos. The existence of hand tattoos was only a small part of the evidence in this case.

In fact, Shumpert's identity as the robber was confirmed by Schusler's facial identification of Shumpert as the robber, along with Jada Pierce's testimony that she recognized Shumpert as the robber from the robbery photos. Pierce also recognized the wig that Shumpert was wearing in the robbery, because she had watched Shumpert make it. (Trial Tr. p. 185 -186) Pierce recognized the shoes that Shumpert was wearing in the bank robbery because she was with Shumpert when he bought them. (Trial Tr. pp. 189-190) She recognized the overalls that Shumpert was wearing during the robbery. (Trial Tr. p. 190) Schusler positively identified Shumpert as the robber and Pierce confirmed that identification with several confirming facts.

Exhibit C appears to be some notes kept by Attorney Amanda Altman while she was representing Shumpert. Obviously, the Government has never had access to this record until Shumpert filed it. But, that exhibit shows that Altman spoke to Shawn Johnson on October 18 and that Johnson claimed to be the Crimestopper's tipster and that Reginald Shumpert was bragging about the robbery. That information, if disclosed by Altman, would certainly not have helped Shumpert and can not be the basis for vacating his sentence. That information helps to confirm Shumpert's guilt. That evidence was never presented to this Court during Shumpert's trial, so it could not be a basis for claiming that Shumpert's trial was unfair.

25

The Exhibits presented by Shumpert do not disclose any error in judgment made by Altman in preparing or trying this case. Shumpert does not show how Altman made any mistake, either in trial questions or theory. Shumpert has seized on the fact that the photos of the robbery do not depict hand photos and has conflated that fact to assume that he should be found not guilty. But it was the entire body of evidence that convicted Shumpert, not the hand tattoo photos.

**Supplemental Issue 4 – Document 11 – pages 7 and 8:**

In this section of his Supplemental pleading, Shumpert makes several vague claims that he was treated unfairly or that his attorney was ineffective.  At page 7 of Document 11, Shumpert states that "Attorney Amanda Lee Altman did not bring to the light of the Court that Movant cousin and Jada Pierce drove the Crown Victoria around town and in March of 2014 the car was sold." At page 8 of Document 11, Shumpert makes the statement: "Attorney Amanda Lee Altman never showed the Court that Movant met up with Jada Pierce May 9th, 2014, in a silver, Chrysler Concord." Shumpert makes no effort to show exactly how this information would have helped his case. The fact that other people drove the robbery getaway car some three to four months before the robbery occurred or that Jada Pierce drove another car is not evidence of Shumpert's innocence. And the issue when the car was sold has no bearing on who was driving it on the day that it was used in the robbery. Shumpert's claims, even if true, do not amount to evidence showing that the trial verdict would have changed, even if that evidence were presented.

The claim raised by Shumpert that Attorney Altman was ineffective for failing to

demonstrate that Jada Pierce drove the Crown Victoria in March, 2014, does not raise any fact that demonstrates Altman's ineffectiveness. His claim fails for lack of factual foundation.

**Supplemental Issue 5 – Document 11 – page 8:**

At page 8 of Document 11, Shumpert also claims that his appellate attorney, Daniel Hoff, stated that the Court was very prejudiced against Shumpert. Once again, Shumpert fails to support that claim with any fact, any evidence or suggestion that the Court would be prejudiced against Shumpert. His claim fails for lack of a factual allegation to support his raw conclusion.

**Supplemental Issue 6 – Document 11 – page 9:**

Shumpert also claims, at page 9 of Document 11, that he sent money through a Western Union facility while he was in Jefferson City, Missouri. Shumpert further states that, "Once Florissant Police Dept. found out Movant was not in St. Louis, Mo. at the Hampton Inn off Dunn's Road, Florissant Police Dept. 'did not' file charges against Movant." This Court assumes that Shumpert is attempting to establish some kind of alibi defense by claiming that he was in another place at the time of the robbery or his flight from that robbery. However, Shumpert provides no documents, no evidence, and no corroboration to show when that Western Union transaction occurred or how it could have affected the outcome of the trial. The Government did not attempt to prove that Shumpert was charged with some kind of crime following his assault of Jada Pierce in St. Louis, so Shumpert's assertion has no bearing on the outcome of his trial. Shumpert had a chance to tell his side of the story and establish an alibi. He chose not to by declining to testify. (Trial Tr. pp. 211-212) Shumpert had a chance to establish an alibi, but chose not to present that evidence to this Court. Now, having lost at trial,

Shumpert seems to believe that he can revisit that choice and present an alibi defense. The trial transcript makes clear that the decision not to testify was Shumpert's, not his attorney's:

Court:      So at this point, Mr. Shumpert, I have to ask you a few questions. Why

            don't you come up here with your lawyer.

            Now that the Government has rested its case I need to advise you of your

            rights to testify or not to testify in the case.

            Obviously, you may testify in this case, tell your side of the story and

            call witnesses in your own behalf. You know that, don't you?

Shumpert:   Yes, sir.

Court:      If you testify, though, the Government lawyers will be allowed to cross-

            examine you, and further, if you have any criminal convictions, they can

            use those convictions to impeach your testimony. Do you understand that

            too?

Shumpert:   Yes, sir, Your Honor.

Court:      Now, on the other hand, if you decided not to testify, no one could force

            you or make you testify against yourself. And if you decided not to

            testify, I am not allowed to hold it against you in any respect that you

28

|  | decided not to testify, because that's your right; OK? Do you understand all that? |
|---|---|
| Shumpert: | Yes, sir, Your Honor. |
| Court: | And have you had plenty of time to talk with your lawyer about the decision whether to testify or not? |
| Shumpert: | Yes, sir. |
| Court: | And have you listened to your counsel on this point and have you come up with a decision then? |
| Shumpert: | Yes, sir. |
| Court: | What do you want to do then? |
| Shumpert: | I'm not going to testify. |

Trial Tr. pp. 211-212.

Shumpert wasn't prevented from presenting an alibi defense. He chose not to at the precise moment when an alibi would have been important.

In any event, Shumpert's bare assertions are not facts justifying a hearing or relief. His claims are unsupported by facts and/or documents, meaning that they should be dismissed.

**Supplemental Issue 7 – Document 11 – page 9:**

Shumpert attempts to explain his reasoning behind his request for relief on page 9 of

Document 11, as follows:

> These missing details in Movant's case shows that counsels made errors
>
> so serious by not functioning as a counsel guaranteed to a defendant by
>
> the Sixth Amendment. Therefore, as stated Oct. 17, 2016 during
>
> pre-trial, the assault in Florissant, Mo would be "the foundation" to
>
> an illegal conviction as well as a phone call that was made by someone
>
> else other than Jada Pierce "which was not the anonymous tip Crimestopper's
>
> caller." This prejudice act and deficient performance would prejudice the "fair"
>
> outcome of a trial.

In all of his Supplemental pleading, Shumpert contends that his counsel or this Court made errors related to such unimportant events such as when the Crown Victoria car was sold, whether Jada Pierce had ever driven that car at a different time, whether the Florrisant Police Department filed a criminal charge against Shumpert, whether Jada Pierce was the person who actually made the Crimestopper's call, and various other matters. Nowhere does Shumpert make any claim that would seriously affect his identification as the bank robbery by the bank teller, Ms. Schusler, or his identification as the bank robber by Jada Pierce. Shumpert ignores all of the evidence that he was the actual bank robber and makes his attack as to topics that were either not part of his trial or were not pertinent to his defense. Shumpert's claims, even if all are true, do not amount to evidence that would support a conclusion that his verdict was wrong.

**Supplemental Issue 8 – Document 11 – pages 11-14:**

At page 11 of Document 11, Shumpert begins a series of complaints that involve the photos of his face and hands that were used at trial. He reasoning is convoluted and confusing. He seems to contend that the Government is inconsistent in its arguments as to the origin of those photos. He sets his claim out by referring to the Government's brief for the appeal of this matter in Eighth Circuit Case Number 17-1168. The portion of the brief that he is referring to deals with the argument that Shumpert's in-court identification was improperly suggestive[1] As best this Court can make out, Shumpert is relying on a statement from a written report made by Brian Ritter concerning his receiving Shumpert's photographs. That report states that Ritter requested those photographs from a Texas officer. Shumpert then compares that statement to a statement from the Government's Response to his Section 2255 petition on page 15 that states, "There is no record of the agent's request in getting those photographs, as that issue was not brought up at the trial." Shumpert seizes on these two statements to contend that there is some kind of falsehood that could help him. In fact, the Government's statements are both true. Ritter's report was never introduced at the trial. None of Ritter's reports were ever introduced at the trial. Shumpert is laboring under the impression that this Court had access to all the reports of every officer and agent. It did not. There is no contradiction here, no inconsistency and no basis for a legitimate Section 2255 petition.

Shumpert then goes on, at page 14, to claim that his trial attorney was ineffective for

---

[1] Shumpert completely ignores the fact that the Eighth Circuit issued its opinion on this matter deciding this issue against Shumpert. ("The district court did not plainly err in admitting the in-court identification." *United States v. Shumpert*, 889 F.3d 488, 491 (8th Cir. 2018). So any issue related to the in-court identification is unavailable as a ground for Section 2255 relief; the Eighth Circuit has already held there was no error in Shumpert's trial on that issue.

failing to challenge inconsistencies in witness testimony. At this point, Shumpert has completely failed to show any inconsistency, let alone an inconsistency material enough to jeopardize his guilty verdict.

**Supplemental Issue 9 – Document 11 - 3:**

In this document, Shumpert requests an evidentiary hearing. He states:

> Movant request the Court to take judicial notice to this Motion, together with all the files, records, transcripts and correspondence relating to the judgment. Especially after the decision from Pre-Trial hearing Oct 17, 2016. See pg. 11, Line 22 to 25. This inherent factor appear plainly on its face that movant is entitle to relief and a need for an evidentiary hearing.

Doc. 11-3, p. 2.

However, Shumpert's statement couldn't be further from the truth. Shumpert has not raised any proper ground for Section 2255 relief. He has set forth no facts that show any possibility that his guilty verdict was improperly obtained. Even if Shumpert were correct on all of the allegations in his Supplemental pleading, his grounds would not be sufficient to overcome the proof of his guilt. His attorney was not ineffective, based on the record before this Court.

## CONCLUSION

For the foregoing reasons, this Court denies Shumpert's § 2255 petition, without a hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Shumpert has not made a substantial showing of the denial of a federal constitutional right.

Dated this  19th  day of August, 2020.


_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE